IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY SAMSON,

                Plaintiff,

      v.

COLETTE PETERS, NICOLE BROWN,
BETHANY SMITH, HEIDI STEWARD, and
KAT KARSTENSEN,

                Defendants.

Case No.: 3:22-cv-00040-AN

OPINION AND ORDER

Plaintiff Jeremy Samson brings this action against defendants Colette Peters ("Peters"), Jason Jorgensen ("Jorgensen"), Nicole Brown ("Brown"), Kat Fahrion ("Fahrion"), Bethany Smith ("Smith"), Heidi Steward ("Steward"), and Kat Carstensen ("Carstensen") (collectively, "defendants") alleging the following claims: (1) 42 U.S.C. § 1983 claims for violations of his Fourth, Eighth, and Fourteenth Amendment rights, (2) violation of Article I, §§ 9, 10, 13, 16, 18, and 34 of the Oregon Constitution; (3) failure to adequately train and/or supervise; and (4) negligence. The parties filed cross-motions for summary judgment on May 30, 2023. Oral argument was held on November 17, 2023. For the following reasons, plaintiff's motion is DENIED in part and GRANTED in part, and defendants' motion is DENIED in part and GRANTED in part.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). When cross-motions for summary judgment are filed, each party's evidence is considered, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

This case arises from plaintiff's incarceration by the Oregon Department of Corrections ("ODOC"). Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot."), ECF [28], at 2. On May 26, 2015, plaintiff was convicted in Multnomah County Circuit Court of Burglary I ("Count 1"), Attempted Robbery II ("Count 5"), and Attempted Assault II ("Count 6"). Decl. of Jon Weiner ("Weiner Decl."), ECF [30], Ex. A, at 1. Plaintiff was sentenced that same day, receiving a 60-month term of incarceration on the Burglary I conviction, a 40-month term of incarceration on Attempted Robbery II conviction, and a 40-month term of incarceration for the Attempted Assault II conviction. The Attempted Robbery II sentence ran concurrently with the Burglary I sentence, and the Attempted Assault II sentence ran consecutively to the Attempted Robbery II sentence. *Id.*, Ex. A, at 1-4. Thus, plaintiff was sentenced to a total incarceration term of eighty months. This was plaintiff's second Burglary I conviction. Pl.'s Mot. 2.

Oregon Revised Statute ("ORS") § 137.635 is an anti-recidivism statute that precludes good time reduction, or any early release, on sentences imposed for a second conviction of certain felonies. In relevant part, that statute states:

> "The convicted defendant who is subject to this section shall not be eligible for probation. The convicted defendant shall serve the entire sentence imposed by the court and shall not, during the service of such a section, be eligible for parole or any form of temporary leave from custody. The person shall not be eligible for any reduction in sentence pursuant to ORS 421.120 or for any reduction in term of incarceration pursuant to ORS 421.121."

Or. Rev. Stat. § 137.635(1). Burglary I is a felony covered by this statute. *Id.* § 137.635(2)(h). It is undisputed that ORS § 137.635 applied to plaintiff's Burglary I sentence; thus, he could not earn any good time reduction on the 60-month sentence imposed for that conviction. Pl.'s Mot. 3; Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF [31], at 2-3. The original judgment reflected this, stating that plaintiff could not "be considered by the executing or releasing authority for any form of Reduction in Sentence" on his Burglary I sentence, but stating that he was "eligible for CTS/Good Time" on his Attempted Assault II and Attempted Robbery II sentences. Weiner Decl., Ex. A, at 2-4.

However, ODOC interpreted, and applied, ORS § 137.635 as barring plaintiff from earning time credits on any sentence served concurrently with his Burglary I sentence, meaning he could not receive earned time credits on his Attempted Robbery II and Attempted Assault II sentences to the extent they ran concurrently with his Burglary I sentence. Defs.' Mot. 2-3. Plaintiff disagreed, asserting that he was entitled to earned time credits on the Attempted Robbery II and Attempted Assault II sentences while they ran concurrently with his Burglary I sentence. Pl.'s Mot. 3.

On July 21, 2015, plaintiff obtained an amended judgment ("First Amended Judgment") from the Multnomah County Circuit Court. That judgment stated that the amendment was made because "there was an error that inadvertently sentenced defendant to an extra 20 months DOC." Weiner Decl, Ex. B, at 1. The amended judgment maintained plaintiff's Burglary I sentence, but modified the Attempted Robbery II sentence so that twenty months ran consecutively to the Burglary I Sentence, and twenty months ran concurrently with the Burglary I sentence. *Id.*, Ex. B, at 3. It also modified the Attempted Assault II

sentence such that it ran concurrently with the Burglary I sentence. *Id.*, Ex. B, at 4. In essence, the amendment clarified that plaintiff's Attempted Assault II sentence would start and end during the Burglary I sentence, but that twenty months of the Attempted Robbery II sentence would run during the Burglary I sentence, and twenty months of it would run after the Burglary I sentence ended.

        On December 23, 2015, plaintiff obtained another amended judgment ("Second Amended Judgment") from the Multnomah County Circuit Court. That judgment identified the amendment reason as "to revise incarceration time in respect to the concurrent and consecutive counts." *Id.*, Ex. C, at 1. It revised language in plaintiff's Burglary I sentence, stating now that he "may be considered by the executing or releasing authority for any form of reduction in sentence, temporary leave from custody, work release, or program of conditional or supervised release authorized by law for which the [d]efendant *is otherwise eligible at the time of sentencing*." *Id.*, Ex. C, at 2 (emphasis added).

        Plaintiff notified prison officials on August 26, 2015 that he believed his earned time credit had been incorrectly calculated. Prison officials responded that his release date had been reviewed and, based on the First Amended Judgment, it was correct. *Id.*, Ex. D, at 21. Plaintiff's attorney then sent a letter to prison officials indicating that plaintiff's sentence was incorrectly calculated, which defendant Carstensen responded to on August 15, 2016. *Id.* Ex. D, at 27. Carstensen acknowledged she had received an amended judgment[1] but explained that plaintiff's "total term of incarceration remained the same." *Id.*, Ex. D, at 27.

        On August 20, 2016, plaintiff again notified prison officials that the Second Amended Judgment "affect[ed] [his] release date." *Id.*, Ex. D, at 22. Officials responded, in part, that "[t]he sentence structure is correct as set forth in the previous memo." *Id.* On August 25, 2016, plaintiff again notified prison officials that he believed the Second Amended Judgment clarified that he was eligible for earned time credit on the entire duration of his Attempted Assault II and Attempted Robbery II sentences. *Id.*, Ex. D, at 23. Officials, again, disagreed, maintaining that plaintiff was ineligible for earned time credit on those sentences while they ran concurrently to his Burglary I sentence under ORS § 137.635, and stating that he

---

[1] She does not indicate in her memorandum which amended judgment she was referencing.

would "need an amended judgment" if he "believe[d] the court intended a different result." *Id.* Plaintiff sent similar notices on January 11, 2017, August 7, 2018, and August 15, 2018, each of which received the same response from officials. *Id.*, Ex. D, at 24-6.

On September 11, 2018, plaintiff filed a formal grievance. *Id.*, Ex. D, at 30. Although the copy of the grievance filed with the Court is illegible, defendant Carstensen's response identifies the issue as plaintiff's belief that he "should be receiving earned time on [his] Attempted Robbery II and Attempted Assault II charges." *Id.*, Ex. D, at 31. Again, Carstensen stated that plaintiff was not eligible for earned time credit on those sentences until his Burglary I sentence was completed, pursuant to ORS § 137.635. *Id.*

On October 11, 2018, plaintiff appealed the denial of his grievance. *Id.*, Ex. D, at 34. On November 2, 2018, defendant Smith affirmed the denial, restating the same interpretation of ORS § 137.635 and referencing Oregon Administrative Rule ("OAR") 291-100-0110(3)(b), which states:

> "An inmate that is determined to be subject to an ORS 137.635 sentence shall serve the entire incarceration term of the sentence imposed by the court, and is not eligible to earn sentence reduction credits (i.e., earned time) during service of the qualifying ORS 137.635 sentence."

*Id.*, Ex. D, at 35-36.

On January 4, 2019, plaintiff appealed Smith's decision. *Id.*, Ex. D, at 38. Defendant Steward affirmed the denial, stating that his sentence calculation was "in accordance with all applicable rules and statutes in accordance with the Judgment of Conviction and Sentence provided by the Court." *Id.*, Ex. D, at 39.

On October 11, 2019, plaintiff sought habeas relief in state court, arguing that he was entitled to earned time credits for his Attempted Robbery II and Attempted Assault II sentences, even while they ran concurrently with his Burglary I sentence, and that failing to properly credit his sentences violated his Eighth and Fourteenth Amendment rights, and the Oregon Constitution. *Id.*, Ex. D, at 1-10. Defendant Brown moved to dismiss plaintiff's habeas petition, arguing that his Eighth and Fourteenth Amendment rights were not violated because ODOC's interpretation of ORS § 137.635 was correct and plaintiff's sentence was properly calculated. *Id.*, Ex. E. In a letter opinion, the Tillamook County Circuit Court agreed

with plaintiff, finding that "the judgment unequivocally states that [p]laintiff is entitled to good time on counts 5 and 6" and that ORS § 137.635 makes no mention of "its applicability to concurrent lesser sentences." *Id.*, Ex. H, at 3. On January 7, 2020, the court issued a judgment stating that "[t]here is no genuine issue of material fact, and Plaintiff is entitled to the relief he seeks," and that plaintiff was entitled to "immediate release." *Id.*, Ex. J, at 1.

Defendant Brown appealed the circuit court ruling, but the Oregon Court of Appeals affirmed the ruling in *Samson v. Brown*, 310 Or. App. 319 (2021). In relevant part, the court held that "if a person is serving prison time on two sentences simultaneously, one which is subject to ORS 137.635, and one which is not, then the earned time prohibition in ORS 137.635 applies at all times to the sentence that is subject to ORS 137.635, but it never applies to the sentence that is not subject to ORS 137.635." *Id.* at 327-29.

Plaintiff now brings this action, alleging that, due to defendants' actions, he was unlawfully incarcerated for approximately six months. Compl., ECF [1], ¶ 11. Plaintiff's Motion for Partial Summary Judgment requests an order: (1) affording preclusive effect to conclusions reached by the state courts on certain essential issues; and (2) finding that plaintiff is entitled to summary judgment on certain elements of his § 1983 claims. Defendant's Motion for Summary Judgment seeks dismissal of all plaintiff's claims.

## DISCUSSION

### A.    Issue Preclusion

As an initial matter, plaintiff argues that the Tillamook County Circuit Court's letter opinion, as well as the Oregon Court of Appeals' opinion, pertain to essential issues that should be given preclusive effect. Issue preclusion is known as "the preclusive effect of a judgment in foreclosing relitigation of issues that have been actually and necessarily decided in earlier litigation." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 n.4 (9th Cir. 2000).

When a § 1983 claim is brought in federal court after adjudication of a state habeas claim, " a decision actually rendered [in state court] should preclude an identical issue from being relitigated in a subsequent § 1983 action, if the state habeas court afforded a full and fair opportunity for the issue to be

heard and determined under federal standards." *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1346-47 (9th Cir. 1981). The preclusive effect of a prior state habeas judgment is determined by the law of the state where the habeas decision was rendered. 28 U.S.C. § 1738; *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993).

Under Oregon law, issue preclusion applies if five factors are met: (1) the issue in the two proceedings is identical; (2) the issue, or determinative fact, was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which a court will give preclusive effect.[2] *Nelson v. Emerald People's Utility Dist.*, 318 Or. 99, 104, 862 P.2d 1293 (1993).

From the Tillamook County Circuit Court's decision, plaintiff seeks preclusive effects for the proposed findings:

1. Defendant Brown's interpretation of ORS 137.635 was wrong and plaintiff's was right. Plaintiff was entitled to use his accumulated good time toward his two non-ORS 137.635 sentences to secure his earliest good time release date.

2. The criminal court's judgment unequivocally states that plaintiff is entitled to good time on his two non-ORS 137.635 sentences.

3. ORS 137.635(1) explicitly states that it applies to sentencing only on repeat felonies listed in section (2).

4. The sentencing anomalies that would stem from defendants' interpretation of ORS 137.635(1) make the statute untenable.

---

[2] Defendants do not dispute that habeas proceedings are the type of proceeding to which courts give preclusive effect. *See Silverton*, 644 F.2d at 324.

5. Plaintiff was entitled to relief on his Eighth and Fourteenth Amendment claims as a matter of law. There was no genuine issue of fact preventing plaintiff from obtaining judgment as a matter of law on these claims.

6. Defendant Brown violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by continuing to imprison him past his lawful release date.

7. Defendant Brown violated plaintiff's Fourteenth Amendment rights by continuing to hold plaintiff past his lawful release date.

8. Plaintiff suffered deprivation of a liberty interest as a result of defendant Brown's interpretation of ORS 137.635.

9. Defendant Brown acted with deliberate indifference to plaintiff's liberty interest.

Pl.'s Mot. 10-11. Based on the Oregon Court of Appeals' decision, plaintiff asks the Court to give preclusive effect to the determination that ORS § 137.635(1) is inapplicable to sentences imposed for convictions other than the qualifying felony, even if the other sentences run concurrently with the sentence subject to ORS § 137.635(1). *Id.* at 15.

As an initial matter, proposed findings 2 and 3 are not issues at all, but rather contain language that is plain on the face of the three sentencing judgments and ORS § 137.635. That is, these proposed findings do not contain issues that needed to be decided or litigated—they merely present factual information readily ascertainable from the judgments and the statute. Thus, the Court need not undergo an issue preclusion analysis on these findings to accept the truth of these statements. However, further analysis is necessary for proposed findings 1, and 4 through 9.

1.    *Identical Issues*

Defendants first argue that issue preclusion is inappropriate because the issues presented in the state habeas proceedings are not identical to the issues presented in this case because the remedy available in a state habeas case is release from prison, whereas the remedy available for § 1983 claims is compensable damages. However, as plaintiff points out, the fact that the remedies available in the two proceedings are not identical is not pertinent to the issue preclusion inquiry. Though this fact may be

relevant if plaintiff was seeking claim preclusion, issue preclusion does not require an assessment of the remedies available in each instance. *Compare Drews v. EBI Cos.*, 310 Or. 134, 140, 795 P.2d 531 (1990) (noting that claim preclusion may apply if subsequent claim seeks remedy that is additional or alternative to that sought in the earlier claim) *with N. Clackamas Sch. Dist. v. White*, 305 Or. 48, 53, 750 P.2d 485 (1988) (noting that issue preclusion applies to decision on particular issue or determinative fact when claim is litigated to final judgment).

However, this does not automatically mean that each of plaintiff's proposed findings are identical to issues raised in the present proceeding. In both the Tillamook County Circuit Court and the Oregon Court of Appeals, the legal issue was whether ORS § 137.635(1) applied to sentences for convictions, not listed in section (2), that run concurrently with a sentence for a conviction listed in that section. On this issue, both courts determined that ORS § 137.635(1) is inapplicable to sentences imposed for convictions not listed in section (2), even if those sentences run concurrently with a sentence imposed for a listed conviction. The Tillamook County Circuit Court necessarily decided two determinative factual issues in its holding: (1) plaintiff was entitled to earned time credit on the full length of his Attempted Assault II and Attempted Burglary II sentences; and (2) plaintiff was entitled to immediate release.

Based on the identified issues raised in the prior proceedings, proposed findings 1 and 5 through 9 are identical to issues raised in this proceeding. That is, plaintiff's claims raise the issues of (1) whether ORS § 137.635 is applicable to sentences imposed for convictions not listed in section (2) that run concurrently with a sentence imposed for a listed conviction; (2) whether plaintiff was detained past his lawful release date; and (3) whether plaintiff's Eighth and Fourteenth Amendment rights were violated. Proposed finding 4 could reasonably be construed as an issue identical to those raised in the present proceeding, particularly in light of defendant's current alleged defenses.

2.    *Actually Decided Essential Issues*

Proposed finding 1 was actually litigated and essential to the final decision on the merits. The proper interpretation of ORS § 137.635 was the core issue analyzed both by the Tillamook court and the Oregon Court of Appeals and the litigation in those cases primarily revolved around that issue.

Although proposed finding 4 could be construed as an issue identical to that raised in the present proceeding, it was not an essential issue to the circuit court's determination.  The untenability of defendants' interpretation of ORS § 137.635 may have had bearing on the court's decision, but that finding was not essential to the ultimate determination that defendants' interpretation was incorrect.  That is, defendants' interpretation need not have been untenable to be, nevertheless, incorrect.

As for proposed findings 5 through 10, relating to plaintiff's Eighth and Fourteenth Amendment violation claims, the Court is not convinced that these issues were actually decided or that their determination was essential to the final decision.  The question, in essence, is whether the Tillamook County Circuit Court necessarily determined that the elements of an Eighth Amendment and Fourteenth Amendment violation were met.  Plaintiff's habeas petition was based on four grounds: (1) miscalculation of earned time credit; (2) an Eighth Amendment violation claim; (3) a Fourteenth Amendment violation claim; and (3) violation of Article 1, § 10 of the Oregon Constitution.  Weiner Decl., Ex. D, at 4-10. Defendant Brown's motion to dismiss the petition alleged that plaintiff's Eighth Amendment and Fourteenth Amendment rights were not violated because his earned time credits were properly calculated.  *Id.*, Ex. E. However, in the letter opinion denying that motion, the court focused solely on the statutory interpretation issue related to whether the credits were miscalculated.  The court did not appear to make any assessment as to deliberate indifference under the Eighth Amendment or lack of due process under the Fourteenth Amendment.

Further, contrary to plaintiff's assertion that he could not have been granted habeas relief absent a constitutional violation finding, such an assessment was not inherently necessary for the court to grant plaintiff habeas relief—the determination that plaintiff's earned time credits were miscalculated, standing alone, was a sufficient ground for habeas relief.  *See* Or. Rev. Stat. § 34.590 ("If no legal cause is shown for the imprisonment or restraint, or for the continuation thereof, the court or judge shall discharge such party from the custody or restraint under which the person is held."); Or. Rev. Stat. § 34.700 ("If it appears that the party detained is imprisoned or restrained illegally, judgment shall be given that the party be discharged forthwith[.]"); *Strong v. Gladden*, 225 Or. 345, 351, 358 P.2d 520 (1961) (holding that

plaintiff's allegation that his sentence term had expired could properly be brought in habeas action). That is, the court needed only to find that plaintiff had been detained past his lawful release date to grant habeas relief. Thus, proposed findings 5 through 90 were not, in their entirety, essential to the final determination, nor were they fully decided. Though the Tillamook County court necessarily determined that plaintiff had been detained past his lawful release date, the court never assessed or otherwise stated that plaintiffs' Eighth or Fourteenth Amendment rights were violated. As such, preclusion on these proposed findings is appropriate only to the extent that they establish that plaintiff was detained beyond his lawful release date.

3.    *Full and Fair Opportunity to be Heard and Party to the Prior Proceeding*

The third and fourth prongs of the issue preclusion inquiry relate to similar issues. That is, whether a party had a full and fair opportunity to be heard is connected to whether that party was present at the prior proceeding or was in privity with a party who was present. On this prong, defendants argue that issue preclusion is inappropriate because the present case includes defendants who were not named parties in the state habeas proceedings.[3] However, plaintiff argues that the privity element of issue preclusion is "specifically designed to address" this type of situation because, though the currently named defendants were not present at the habeas proceedings, they were in privity with Brown, who was present at the proceedings. Pl.'s Reply in Support of Mot. for Part. Summ J., ECF [38], at 5.

Under Oregon law, privity "includes those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims." *D'Amic ex rel. Tracey v. Ellinwood*, 209 Or. App. 713, 718, 149 P.3d 277 (2006) (quoting *Wolff v. Du Puis*, 233 Or. 317, 322, 378 P.2d 707 (1963), *overruled on other grounds by Bahler v. Fletcher*, 257 Or. 1, 474 P.2d 329 (1970)). The crux of the privity inquiry is whether the third party's interests were fully protected in the first proceeding in such a manner that it would be "fundamentally fair" to preclude them from relitigating certain issues. *See Bloomfield v. Weakland*, 339 Or. 504, 511, 123 P.3d 275 (2005).

---

[3] It is undisputed that defendant Brown was a party in the habeas proceeding, and defendants do not argue that Brown did not have a full and fair opportunity to be heard in the habeas proceeding.

On balance, the Court finds that the defendants' interests were represented in the habeas proceeding. Defendant Brown's defense in the habeas proceeding centered entirely around the argument that plaintiff's earned time credits were properly calculated, and plaintiff's current claims against defendants all relate to that issue. Though defendants argue that they had no opportunity to raise a qualified immunity defense in the habeas proceeding, this argument is irrelevant as issue preclusion does not prevent defendants from raising that defense in the present proceeding.

As such, the Court will recognize the preclusive effect of the following issues: (1) ORS § 137.635(1) is inapplicable to sentences imposed for convictions other than the qualifying felony, even if the other sentences run concurrently with the sentence subject to ORS § 137.635(1); (2) plaintiff was entitled to use his accumulated good time toward his two non-ORS § 137.635 sentences to secure his earliest good time release date; and (3) plaintiff was detained beyond his lawful release date.

**B.      Motions for Summary Judgment**

As an initial matter, plaintiff stipulated to the dismissal of Jorgensen and Fahrion and his Fourth Amendment basis for his § 1983 claim in his response to defendants' Motion for Summary Judgment. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF [34], at 3. The Court dismissed those two defendants, and plaintiff's Fourth Amendment basis for his § 1983 claim, at oral argument on November 17, 2023. *See* Minutes of Proceedings, ECF [40]. Thus, plaintiff's remaining bases for his § 1983 claims are for violations of Eighth and Fourteenth Amendments.

In relation to his § 1983 claims, plaintiff seeks summary judgment on the limited issues of (1) whether an Eighth Amendment and Fourteenth Amendment violation occurred; (2) whether defendant Brown violated plaintiff's Fourteenth Amendment rights; (3) whether defendants are persons for purposes of § 1983; (4) whether defendants were acting under color of state law; (5) whether plaintiff was unlawfully kept in prison past his lawful release date; and (6) whether defendant Brown acted with deliberate indifference.

Defendants seek summary judgment on all plaintiff's claims on the following bases: (1) defendants Peters and Brown cannot be held liable for violations of constitutional rights under a *respondeat*

*superior* theory; (2) plaintiff's claims against defendants in their official capacity are barred by the Eleventh Amendment;[4] (3) defendants are entitled to apparent authority immunity under ORS § 30.265(g)(f); and (4) defendants are entitled to qualified immunity.

      1.    *Plaintiff's § 1983 Claims*

      To state a claim under 42 U.S.C. § 1983, a plaintiff must establish (1) that a constitutional, or federal statutory, right was violated; (2) that the defendant proximately caused the violation; (3) that the defendant is a person; and (4) that the defendant was acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Defendants do not contest elements three or four; as such, the Court considers them conceded.

      a.    Violation of a Right

      Plaintiff asserts that his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process were violated. The Eighth Amendment may be violated if an inmate is detained beyond his lawful release date and prison officials were "deliberately indifferent" to the unlawful detention. *Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir. 1985). In this context, deliberate indifference may be shown if the prison officials were aware of the inmate's complaint but failed to aggressively investigate it. *See Plumb v. Prinslow*, 847 F. Supp. 1509, 1521 (D. Or. 1994). Based on the established and preclusive facts, plaintiff was incarcerated past his lawful release date. Plaintiff's only argument regarding deliberate indifference, however, relies on the presumption that all his proposed findings are given preclusive effect.[5] That is not the case. Further, assessing the evidence on the record to determine the existence, or absence, of deliberate indifference would necessarily require this Court to stray into questions regarding each defendant's alleged involvement. Given that

---

[4] Plaintiff clarified at oral argument that each defendant is being sued in their individual capacity. Because the Eleventh Amendment only affords immunity to government officials sued in their official capacity, this argument is not addressed. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

[5] Though plaintiff states that "[e]ven absent preclusive effect, [p]laintiff as a matter of law establishes [these elements]," a conclusory statement is insufficient to support summary judgment. Pl.'s Mot. 21.

plaintiff is not seeking summary judgment on the issue of involvement, the Court declines to make a determination as to whether any defendant acted with deliberate indifference.

The Fourteenth Amendment may be violated if a state creates a statutory right to release from prison, thus creating a liberty interest, but prison officials fail to follow minimum due process "appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated." *Haygood*, 769 F.2d at 1355. In the context of earned time credits, officials who make calculations in a manner that denies an inmate their statutory right to liberty without due process of law violate the inmate's due process right under the Fourteenth Amendment. *Id.* Again, plaintiff's only argument on this point relies on the presumption that all his proposed findings are given preclusive effect. Given the absence of any substantive argument, the Court finds, in accord with the preclusive issues, that plaintiff had a state-created liberty interest, and his sentence calculations were made in a manner that denied plaintiff his statutory right to liberty. However, for the same reasons stated in relation to plaintiff's Eighth Amendment basis, the Court declines to make an assessment regarding whether any defendant afforded plaintiff due process prior to the deprivation of his liberty interest.

       b.     Causation

Defendants argue that defendants Peters and Brown are supervisory officials who cannot be held liable under § 1983 solely for their actions taken as supervisors.[6] Peters is the director of ODOC, and Brown was the superintendent at the facility where plaintiff was incarcerated during his incarceration. Compl. ¶ 4. Although defendants make additional arguments for this prong related to the adequacy of plaintiff's pleadings, the parties stipulated that, through these cross-motions, "neither party would move for summary judgment based on an alleged lack of evidence." Joint Trial Mem., ECF [33], at 1. Accordingly, to the extent defendants' arguments assert lack of evidence issues, they are not considered in this section.

Generally, supervisory liability may only be imposed for an official's "own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the

---

[6] Defendants make no argument as to causation with regard to defendants Smith, Steward, or Carstensen.

constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005). Alternatively, a supervisor may be "personally involved" in the deprivation of a constitutional right "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Such acts are sufficient to meet the causation requirement even if the official only "sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 558 F.2d at 743).

Plaintiff argues that Brown and Peters were personally involved in the deprivation of his constitutional rights because they were involved in a series of acts that they knew caused him constitutional harm. Even if Brown did not know of the deprivation during plaintiff's administrative complaints, he argues that she was aware, at the very latest, by November 18, 2019, when she filed a response to plaintiff's habeas petition. Further, plaintiff argues that Peters was on notice of his constitutional harm, and her inaction was a substantial factor in plaintiff's unlawful imprisonment.

Viewing the facts in the light most favorable to plaintiff, the Court finds that no genuine issue of material fact exists as to whether Peters was personally involved in the deprivation of plaintiff's constitutional rights. Though plaintiff contends that Peters had ultimate authority to direct the Offender Information and Sentence Computation ("OISC") unit to abandon its interpretation of ORS § 137.635, he identifies little evidence supporting the proposition that Peters was aware of OISC's interpretation. That is, plaintiff argues that "a statutory interpretation that had been contested for years by Plaintiff, that prompted a judge to amend a sentence to clarify, that led to multiple lawyers' involvement, and even led to a petition for writ of habeas corpus naming defendant Brown, would have put Ms. Peters on ample notice of a constitutional deprivation." Pl.'s Resp. 26. However, these facts, even construed in the light most favorable to plaintiff, do not support the finding that Peters knew of OISC's incorrect calculation of plaintiff's earned time credits. Plaintiff provides no evidence that Peters ever saw or was notified of his administrative

complaints, the Second Amended Judgment, or his habeas petition. Nor does plaintiff provide any evidence that Peters directed the OISC to interpret ORS § 137.635 in the manner that it did. As such, a reasonable jury could not find that Peters was personally involved in the deprivation of plaintiff's constitutional rights.

However, the Court finds that a genuine issue of material fact exists as to whether Brown was personally involved in the deprivation of plaintiff's constitutional rights. Though Brown does not work in the OISC, Brown opposed plaintiff's habeas petition, specifically asserting that the OISC properly calculated plaintiff's earned time credits under ORS § 137.635. At that time, though Brown was on notice that plaintiff believed his earned time credits had been incorrectly calculated and he was being detained beyond his lawful release date, and Brown acknowledged the Second Amended Judgment in her opposition, Brown failed to initiate any investigation into plaintiff's complaints before opposing his habeas petition. A reasonable jury could find that, but for Brown's opposition, plaintiff would not have been unlawfully detained for an additional two months.

2.    *Apparent Authority Immunity*

Even if plaintiff's rights were violated, defendants argue that they are entitled to apparent authority immunity under ORS § 30.265(6)(f),[7] which states:

> "Every public body and its officers, employees and agents acting within the scope of their employment duties . . . are immune from liability for: . . . [a]ny claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid, or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice."

An "inapplicable" law includes situations where a law is otherwise valid but is misinterpreted by a public actor. *Cruz v. Multnomah Cnty.*, 279 Or. App. 1, 13, 381 P.3d 856 (2016). Though public actors need not analyze the validity of a statute before relying on it, the actor must act "without bad faith or malice . . . in accordance with a plausible construction of the law" to benefit from immunity. *Id.* at 12. In essence, "apparent authority" is derived from the plausibility of an official's interpretation of the relevant law.

---

[7] As plaintiff correctly points out, ORS § 30.265(6)(f) is not applicable to § 1983 claims. *See Rogers v. Saylor*, 306 Or. 267, 273 (1988). Thus, this argument is assessed only in relation to plaintiff's state law claims.

Defendants argue that they are immune from liability in this case because their actions followed a plausible interpretation of ORS § 137.635 and OAR 291-100-0110(3)(b), and they did not act with bad faith or malice.  Specifically, defendants argue that because ORS § 137.635 states that "the *person* shall not be eligible for any reduction in sentence pursuant to ORS 421.120 or for any reduction in term of incarceration pursuant to ORS 421.121," defendants plausibly interpreted the statute as applying to all sentences being served within the "term of incarceration," even if only one of those sentences was identified in section (2).  Defs.' Mot. 12 (quoting ORS § 137.635(1)).  However, plaintiff argues that apparent authority immunity does not apply because defendants' interpretation of ORS § 137.635 was unreasonable.

In assessing the plausibility of a state official's interpretation of a statute, the Oregon Court of Appeals has expressly rejected a standard based on the reasonableness of an official's interpretation.  *See Cruz*, 279 Or. App. at 15 ("Notably, the *Higgins* court did not undertake an analysis of whether the judge's reliance on the statute was reasonable.  Rather, it pointed out that the judge had broad authority in the probation context and that the statute on which the judge had relied granted 'apparent authority' for the judge's act.").  In *Cruz*, the Oregon Court of Appeals found that the defendants' construction of 8 C.F.R. § 287.7(d) was plausible because it was "based on the text of the regulation, relied on an ordinary meaning of the word 'shall,' and was part of a coherent construction of the regulation as a whole."  *Id.* at 17.

As highlighted by the Oregon Court of Appeals, the statutory interpretation issue regarding ORS § 137.635's applicability to sentences not otherwise covered by the statute was an "issue of first impression."  *Samson*, 310 Or. App. at 323.   However, even as a matter of first impression, this Court cannot say that defendants' interpretation was plausible.  First, the plain language of the statute clearly contradicts defendants' interpretation.  Defendants rely on the single use of the word "the person," but ignore the first sentence of the statute establishing its scope: "When, *in the case of a felony described in subsection (2) of this section*, a court sentences a convicted defendant . . . ."  Or. Rev. Stat. § 137.635(1) (emphasis added).  Defendants' interpretation also ignores the fact that subsection (2), quite explicitly, limits the scope of the statute, stating, "Felonies to which subsection (1) of this section applies include *and are limited to*: . . . ."  *Id.* § 137.635(2) (emphasis added).

17

Second, defendants' interpretation is not coherent in the context of the statute as a whole or in the results it would create. Defendants seem to interpret the phrase, "The person shall not be eligible for . . . any reduction in term of incarceration pursuant to ORS 421.121" as meaning the person is ineligible for earned time credit on all sentences that the person is serving until the sentence covered by the statute ends. Yet, this interpretation necessarily reflects the understanding that the statute only covers certain sentences. That is, defendants are, in essence, simultaneously arguing that the statute as a whole only applies to specific sentences, but that a subpart of the statute, ineligibility for earned time credit, can apply to a person generally. If the statute applied to the person's incarceration term as a whole, it would be more logical to presume that it would continue to apply to that incarceration term even after the specific sentence covered by the statute ends. Put another way, defendants seem to acknowledge that the statute applies only to sentences imposed for specific convictions because they do not believe it applies after that sentence ends, but then illogically conclude that the statute still applies to sentences, not covered by the statute, that are served concurrently with a covered sentence.

Third, defendants' reliance on OAR 291-100-0110(3)(b) as supporting the plausibility of their interpretation does not persuade the Court. The very title of section (3) is "Sentence Computation *of ORS 137.635 Sentences*." Or. Admin. R. 291-100-0110(3) (emphasis added). The plain language of the section title demonstrates that it is applicable to how sentences covered by ORS § 137.635 are computed— not how sentences running concurrently to an ORS § 137.635 sentence are affected. Though subsection (3)(b) states that inmates are "not eligible to earn sentence reduction credits (i.e., earned time) during service of the qualifying ORS 137.635 sentence," when the subsection is read as a whole, it appears clear that this language merely clarifies the mandate that the inmate "serve the entire incarceration term of the sentence imposed by the court[.]" That is, subsection (3)(b) is a reiteration of the main purpose of ORS § 137.635: "[E]nsuring that the defendant is sentenced to a determinate term in prison for that felony and serves every day of it." *Samson*, 319 Or. App. at 325. Indeed, subsections (3)(d) and (e) provide clarifying information for how earned time credits should be applied when an inmate is already serving a predicate ORS § 137.635 conviction; if non-predicate sentences served concurrently with ORS § 137.635 sentences were, similarly,

to be treated differently, such language could have easily been added to the regulation.

Finally, defendants' interpretation of ORS § 137.635 is not plausible in light of the clear language of the Second Amended Judgment.  To be sure, each iteration of the sentencing judgment clearly stated that plaintiff was entitled to "Good Time/CTS" on his Attempted Robbery II and Attempted Assault II sentences.  Weiner Decl., Exs. A, B, C.  However, the Second Amended Judgment intentionally clarified the language on plaintiff's Burglary I sentence, stating that "[t]he Defendant may be considered by the executing or releasing authority for any form of reduction in sentence, temporary leave from custody, work release, or program of conditional or supervised release authorized by law *for which the Defendant is otherwise eligible at the time of sentencing*."  *Id.*, Ex. C, at 2 (emphasis added).  Given that the first two judgments had stated that plaintiff "may *not* be considered . . . for any form of Reduction in Sentence" under plaintiff's Burglary I sentence, the Second Amended Judgment was a fairly obvious directive that plaintiff was entitled to earned time credit for the entire duration of his Attempted Assault II and Attempted Robbery II sentences.  *Id.*, Ex. A, B.  In the face of a clear judicial order highlighting how plaintiff's earned time credit should be calculated, defendants' continued interpretation of the statute cannot be seen as plausible.

Because defendants' interpretation of ORS § 137.635 was not a plausible construction of the statute, they were not acting under apparent authority and are not entitled to immunity.

3.    *Qualified Immunity*

Finally, defendants argue that they are entitled to qualified immunity.  Government officials are entitled to qualified immunity, even if they violate an individual's constitutional rights, if the law governing the official's conduct was not clearly established.  *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997).  However, even if the law governing the official's conduct was clearly established, qualified immunity may still apply if a reasonable official could have believed his conduct was lawful.  *Id.*  The doctrine is designed to protect public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Elder v. Holloway*, 510 U.S. 510, 514 (1994).  If applicable, qualified immunity provides immunity against liability, as well as immunity from suit and other litigation burdens.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Accordingly, qualified immunity is designed to

dismiss "insubstantial claims" against government officials before the discovery phase. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987). Qualified immunity questions should, therefore, be resolved at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Plaintiff argues that the law clearly establishes that defendants violated his Eighth Amendment and Fourteenth Amendment rights by confining him past his lawful release date. It cannot reasonably be disputed that plaintiff had a clearly established constitutional right to not be detained past his lawful release date. *Haygood v. Younger*, 769 F.2d 1350, 1354-55, 1358 (9th Cir. 1985); *see Alexander v. Perrill*, 916 F.2d 1392, 1395 (9th Cir. 1990). However, defendants argue that, even if plaintiff's constitutional rights were violated, it would not be clear to a reasonable prison official that defendants' actions were unlawful.

Generally, an official is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 746; *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The primary inquiry is whether the defendant's "specific conduct" violated clearly established law, meaning precedent must involve, at the least, "closely analogous" conduct. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 909, 912 (9th Cir. 2017). Thus, the Court examines each defendant's alleged conduct in turn.

At the time of plaintiff's incarceration, defendant Smith was the administrator for OISC, defendant Steward was the assistant director for OISC, and defendant Carstensen was an OISC employee. Defendants concede that Smith, Steward, and Carstensen "participated in the calculation of [p]laintiff's sentences." Defs.' Mot. 5. Though plaintiff frames the inquiry as whether defendants acted reasonably in interpreting, and applying, ORS § 137.635, the more relevant inquiry is whether these defendants acted reasonably in *failing* to properly interpret ORS § 137.635. That is, in the context of § 1983 claims where the plaintiff was unlawfully detained past their release date, the Ninth Circuit has identified the relevant qualified immunity inquiry as whether "it was clearly established that [defendants] had a duty to investigate [plaintiff's] claim that he was being incarcerated for a longer period than permitted by law." *Alexander*,

916 F.2d at 1397.

       In *Alexander*, the Ninth Circuit held that qualified immunity did not protect the prison warden or the prison administrative systems manager because "there is no question that defendants had a duty to investigate [the plaintiff's] complaint when he presented his evidence to them. A reasonable prison official would have known that he was under a duty to act." *Id.* at 1398-99. In that case, the plaintiff had presented the defendants with "certified court documents" that he claimed "entitled him to the jail and presentence credits," but the official calculating the plaintiff's sentence "made no inquiries[ ] [and] conducted no investigation[.]" *Id.* at 1394. Rather, both the defendants relied solely on a memorandum from the Bureau of Prison's Central Office. *Id.* Similarly, in *Haygood*, the plaintiff notified officials that he believed his earned time credits had been miscalculated, but officials, upon review of his file and based on an attorney general opinion, maintained that the calculation was correct. *Haygood v. Younger*, 527 F. Supp, 808, 809-10 (E.D. Cal. 1981) (subsequent history omitted). In denying the defendants' motion for judgment notwithstanding the verdict, a decision that the Ninth Circuit affirmed, the district court highlighted that the defendants "undertook no further investigation, nor did they seek to institute a hearing or other administrative procedure to determine if the plaintiff should have been released." *Id.* at 823.

       More recently, in *Alston v. Read*, the Ninth Circuit held that the defendants who had incorrectly calculated the plaintiff's sentence were entitled to qualified immunity. 663 F.3d 1094, 1099 (9th Cir. 2011). The court highlighted that, unlike in *Alexander* and *Haygood*, the plaintiff had never presented the defendants with evidence contradicting, or otherwise indicating, that the plaintiff's sentence calculation was incorrect. *Id.* In that light, the court held that there is no "clearly established duty on a prison official to review a prisoner's original court records beyond those in his institutional file." *Id.* at 1100.

       Unlike *Alston*, defendants in this case have not denied that they were aware of the Second Amended Judgment, which stated that plaintiff could be considered "for any form of reduction in sentence . . . for which [he] is otherwise eligible at the time of sentencing," and that he was entitled to earned time credits on his Attempted Assault II and Attempted Robbery II sentences. Weiner Decl, Ex. C. That is, plaintiff provided documentary evidence indicating that defendants had miscalculated his sentence

under ORS § 137.635.  Yet, like the defendants in *Haygood* and *Alexander*, Smith, Steward, and Carstensen conducted no further investigation upon receipt of plaintiff's claims, nor did they reconsider their position when presented with credible, court-certified documents that raised "a substantial question regarding the correctness" of their interpretation.  *Alexander*, 916 F.2d at 1298.  Their only response was to maintain that plaintiff's sentence had been correctly calculated, based on their interpretation of ORS § 137.635.  Given the clearly established law set forth in *Alexander* and *Haygood*, the Court finds that a jury could reasonably conclude that a reasonable prison official would not have maintained defendants' interpretation of ORS § 137.635 without further investigation, particularly when presented with documentary evidence like the Second Amended Judgment indicating that that interpretation was incorrect.  Defendants Smith, Steward, and Carstensen are not entitled to qualified immunity.

As for defendant Brown, the resolution is less clear.  Both *Haygood* and *Alexander* involved only defendants who were directly responsible for computing the plaintiffs' sentences; neither case addressed the potential culpability of a superintendent.  And, unlike Smith, Steward, and Carstensen, Brown's involvement arose primarily from her opposition to plaintiff's habeas petition.  However, Brown's opposition to plaintiff's habeas petition referenced the Second Amended Judgment, acknowledging that it stated that plaintiff "was eligible for earned time on counts five and six[.]"  *See* Weiner Decl, Ex. E, at 4-5, 13.  On balance, viewing the facts in the light most favorable to plaintiff, a reasonable jury could conclude that Brown was aware of plaintiff's complaints about his sentence calculation, and the documentary evidence supporting his complaints, but failed to conduct or initiate an investigation into plaintiff's claims. *See Ward v. Day*, 107 Fed. App'x 727, 730 (9th Cir. 2004) (unpublished) (affirming denial of qualified immunity as to prison warden and deputy warden where evidence indicated that they were aware of state court order requiring earned time credit but did not conduct further investigation).  Therefore, Brown is not entitled to qualified immunity.

**CONCLUSION**

Accordingly, plaintiff's Motion for Partial Summary Judgment, ECF [29], is GRANTED in part and DENIED in part.  Defendant's Motion for Summary Judgment, ECF [31], is GRANTED in part and DENIED in part.  Defendant Colette Peters is dismissed from this action.

IT IS SO ORDERED.

DATED this 7th day of March, 2024.

Adrienne Nelson
United States District Judge